541 F.2d 1275
 UNITED STATES of America, Appellee,
v.
Geneva M. RED FEATHER, Appellant.
UNITED STATES of America, Appellee,
v.
Joseph BILL, Appellant.
UNITED STATES of America, Appellee,
v.
Sioux CASPER, Appellant.
UNITED STATES of America, Appellee,
v.
Christopher Oliver LAND, Appellant.
UNITED STATES of America, Appellee,
v.
Martina Ellen WHITE BEAR, Appellant.
 Nos. 76-1182, 76-1203, 76-1031, 76-1032 and 76-1181.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 15, 1976.
Decided Aug. 25, 1976.
Rehearing En Banc Denied Sept. 16, 1976.
As Modified On Denial of Rehearing Sept. 22, 1976.
 
 Kenneth E. Tilsen, St. Paul, Minn., for appellants; Jacquelin D. Quick, St. Paul, Minn., and Joseph Beeler, Coconut Grove, Fla., on brief.
 Keith E. Uhl, Sp. Asst. U. S. Atty., Des Moines, Iowa, for appellee; Allen L. Donielson, U. S. Atty., Des Moines, Iowa, filed appearance; Harold O. Bullis, U. S. Atty., Fargo, N. D., William F. Clayton, U. S. Atty., Sioux Falls, S. D., on brief.
 Before HEANEY, ROSS and STEPHENSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 These consolidated direct criminal appeals are taken following the verdict of the trial court[1] that appellants herein were guilty of attempting to interfere with United States Marshals and FBI agents during a civil disorder at Wounded Knee, South Dakota, in 1973 in violation of 18 U.S.C. § 231(a)(3).[2] The issues raised by appellants include whether the evidence presented was sufficient to sustain their convictions and whether the evidence established that the federal law enforcement personnel at Wounded Knee were lawfully engaged in the lawful performance of their official duties. In addition, we must determine whether the trial court erred in holding that prior district court opinions did not collaterally estop the government from relitigating in the instant case the issue of the lawfulness of the federal officers' functions at Wounded Knee. After careful examination of these contentions, we affirm appellants' convictions on the basis of the trial court's thorough and well reasoned opinion. United States v. McArthur, 419 F.Supp. 186 (D.N.D.1975).
 
 
 2
 The first issue we address is the sufficiency of the evidence. Appellants were charged with violating the Civil Obedience Act of 1968, 18 U.S.C. § 231(a) (3), which provides in relevant part:
 
 
 3
 Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function (shall be subject to punishment).
 
 
 4
 In order to obtain a conviction under this statute for the crime charged in the indictments involved herein, the district court properly held that the government had the burden of proving beyond a reasonable doubt the following elements:
 
 
 5
 1. That a civil disorder existed at the time of any alleged violation;
 
 
 6
 2. That such civil disorder was resulting in interference with a federally protected function;
 
 
 7
 3. That one or more law enforcement officers were lawfully engaged in the lawful performance of their official duties incident to and during the commission of such civil disorder;
 
 
 8
 4. That the Defendant attempted to commit an act for the intended purpose of obstructing, impeding, or interfering, either by himself or with someone else, in a violent manner with such law enforcement officer or officers;
 
 
 9
 5. That such attempt to act was done willfully and knowingly.
 
 
 10
 United States v. McArthur, supra, 419 F.Supp. at 190.
 
 
 11
 Appellants initially contend that the evidence failed to establish that they had committed any acts which constituted an attempt to interfere with federal officers as prohibited by section 231(a)(3).[3] In our view, the evidence presented to the trial court established beyond a reasonable doubt that the appellants possessed the requisite specific intent to complete the crime with which they were charged and that they had engaged in affirmative conduct which was sufficient to constitute an attempt to commit that crime. United States v. Mandujano, 499 F.2d 370, 372-77 (5th Cir. 1974), cert. denied, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975); United States v. Coplon, 185 F.2d 629, 633 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952). See also United States v. Oviedo, 525 F.2d 881, 883-86 (5th Cir. 1976).
 
 
 12
 The evidence revealed that appellants Red Feather, Bill, White Bear, and Casper were apprehended by Bureau of Indian Affairs (BIA) patrolmen on April 25, 1973, in a grassy area within the patrolled perimeter that had been established by federal law enforcement officials around the occupied village of Wounded Knee.[4] At the time of their arrest these appellants were lying in the grass in an apparent attempt to conceal themselves. On or near them was found a shotgun, a .30 caliber rifle, two cartridge belts, and several hundred rounds of ammunition, including 800 rounds of 7.62 millimeter cartridges and several hundred .30 caliber cartridges. Following apprehension, Ms. Red Feather stated that she was attempting to enter Wounded Knee on foot with the guns and ammunition. Her three companions made no statements to the federal authorities regarding their intentions.[5]
 
 
 13
 Appellant Land was arrested on March 10, 1973, by Deputy United States Marshals patrolling the Wounded Knee defense perimeter. At the time of his arrest Land had in his possession several boxes of ammunition, some fireworks, and six knives. He stated to authorities at the time that he wanted to enter Wounded Knee in order to assist the Indians.
 
 
 14
 Based upon these facts, the district court concluded:
 
 
 15
 I find that these Defendants did (attempt to) carry, on foot, surreptitiously, through a patrolled perimeter, arms and ammunition which had a substantial capacity to reach out and wound or kill. I find that they intended it for a center from which ammunition was being fired at law enforcement officers, which did wound and kill. That is sufficient conduct to amount to an attempt.
 
 
 16
 United States v. McArthur, supra, 419 F.Supp. at 191. After an independent review of the entire record,[6] we hold that this finding is consistent with the law and amply supported by the evidence under the reasonable doubt standard. See Holland v. United States, 348 U.S. 121, 139-40, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Kelton, 519 F.2d 366, 367 (8th Cir. 1975). Cf. United States v. Clunn, 457 F.2d 1273, 1275 (10th Cir. 1972).
 
 
 17
 Appellants further contend that the evidence was insufficient to prove beyond a reasonable doubt that the federal officers at Wounded Knee were "lawfully engaged in the lawful performance of (their) official duties" as required under section 231(a)(3). Instead, they claim that use was made of the armed forces at Wounded Knee during the civil disorder to such an extent that it constituted a violation of the Posse Comitatus Act, 18 U.S.C. § 1385[7] and thus rendered the actions of the federal officers at Wounded Knee unlawful for purposes of a section 231(a)(3) conviction.
 
 
 18
 With respect to this contention, the district court carefully considered the extent of the military involvement at Wounded Knee as evidenced in the record. In addition, the court extensively reviewed in its opinion the legal standards adopted by other district courts in addressing the Wounded Knee posse comitatus issue. See United States v. Red Feather, 392 F.Supp. 916 (D.S.D.1975);[8] United States v. Means, 383 F.Supp. 368, 374-77 (D.S.D.1974); United States v. Jaramillo, 380 F.Supp. 1375 (D.Neb.1974).
 
 
 19
 After discussing the various rationales expressed in these opinions, the district court below announced its own legal standard for determining whether a violation of the posse comitatus statute had occurred:
 
 
 20
 Were Army or Air Force personnel used by the civilian law enforcement officers at Wounded Knee in such manner that the military personnel subjected the citizens to the exercise of military power which was regulatory, proscriptive, or compulsory in nature, either presently or prospectively?
 
 
 21
 If the evidence adduced does raise that question of fact, then the government has failed to prove the third element of the offense. If not, then the third element of the offense stands established by the prima facie lawfulness of the performance of their duties by federal government officials as provided for in 18 U.S.C. § 3052 and § 3053.
 
 
 22
 United States v. McArthur, supra, 419 F.Supp. at 194.
 
 
 23
 Examination of the factual record as to the extent of the military involvement in the instant case[9] led the court to conclude:
 
 
 24
 Thus, I do find that while the evidence of "use of any part of the Army or Air Force" is relevant to the issue of "lawful performance", I further find that it was not material enough to taint the presumption that "one or more" law enforcement officers were acting in performance of their duties.
 
 
 25
 United States v. McArthur, supra, 419 F.Supp. at 195. We affirm this finding.
 
 
 26
 The final issue advanced in this appeal is whether the district court erred in finding that the government was not collaterally estopped from litigating the posse comitatus issue in this case having had the issue resolved against it in at least one prior final decision.[10] The district court initially discussed the applicability of the principles of mutuality in a criminal context and determined that "(i)t would seem indefensible to refuse to apply collateral estoppel on the basis of lack of mutuality merely because this is a criminal action and not a civil one." Thus, the lack of privity between the defendants in this action and the prior actions was not found to bar the advancement of a collateral estoppel defense below.
 
 
 27
 The district court next addressed the issue of whether the use of collateral estoppel extended to questions of law as opposed to questions of fact or mixed law and fact. See Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Laughlin v. United States, 154 U.S.App.D.C. 196, 474 F.2d 444, 453 (1972), cert. denied, 412 U.S. 941, 93 S.Ct. 2784, 37 L.Ed.2d 402 (1973). While acknowledging that the public policy favoring an end to litigation made consideration of the nature of the question upon which estoppel was sought seem immaterial, the district court below held that
 
 
 28
 (W)here a trial judge, as in United States v. Jaramillo, supra, establishes a rule or standard of law, application of the doctrine of collateral estoppel would extend that ruling, which is the law of the first case, to become the law of the second case.
 
 
 29
 The primary risk is not one of eroding the power of the second court. A more serious risk is that after the doctrine is applied in a matter of first instance, when it gets to the appellate court, that court is foreclosed from considering other, equally useful reasoning as to the question of law, which would normally generate in the second trial court.
 
 
 30
 For this reason, I find that the doctrine of collateral estoppel should not extend to questions of law.
 
 
 31
 United States v. McArthur, supra, 419 F.Supp. at 198. We concur in that reasoning.
 
 
 32
 The judgment of the trial court is affirmed.
 
 
 33
 HEANEY, Circuit Judge (concurring and dissenting).
 
 
 34
 I agree with the majority on the issue of collateral estoppel but vote to reverse the decision of the lower court both because I find the evidence insufficient to justify the conviction and because I believe that an erroneous standard was applied in determining whether the posse comitatus statute was violated.
 
 THE SUFFICIENCY OF THE EVIDENCE
 
 35
 In United States v. Dellinger, 472 F.2d 340, 392-393 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), Chief Judge Thomas Fairchild set forth succinctly the principles applicable in determining whether sufficient evidence has been presented to support a conviction in cases of this type:
 
 
 36
 When the group activity out of which the alleged offense develops can be described as a bifarious undertaking, involving both legal and illegal purposes and conduct, and is within the shadow of the first amendment, the factual issue as to the alleged criminal intent must be judged strictissimi juris. This is necessary to avoid punishing one who participates in such an undertaking and is in sympathy with its legitimate aims, but does not intend to accomplish them by unlawful means. Specially meticulous inquiry into the sufficiency of proof is justified and required because of the real possibility in considering group activity, characteristic of political or social movements, of an unfair imputation of the intent or acts of some participants to all others.
 
 
 37
 The requirement of judging intent strictissimi juris grew out of penalties based on membership as such, Scales v. United States, 367 U.S. 203, 230, 81 S.Ct. 1469, 1487, 6 L.Ed.2d 782, 802 (1961), Scythes v. Webb, 307 F.2d 905, 907 (7th Cir., 1962) (standard for determining intent for deportation of one who is a member of an organization that "advocates or teaches . . . the overthrow by force, violence, or other unconstitutional means of the Government of the United States"). Its application was expanded in United States v. Spock, 416 F.2d 165 (1st Cir., 1969) to an instance where defendants were charged with a conspiracy rooted in opposition to the draft and to the war in Vietnam. The court described the underlying situation as "a bifarious undertaking, involving both legal and illegal conduct."
 
 
 38
 We do not, however, understand the strictissimi juris doctrine as requiring evidence of unlawful intent so compelling that a verdict of not guilty would be perverse. We do not view it as wholly depriving the jury of its customary function in interpreting ambiguous statements in the light of circumstances and choosing among reasonable inferences. In order to convict, a jury must in any event be satisfied beyond a reasonable doubt. The strictissimi juris doctrine emphasizes the need for care in analyzing the evidence against a particular defendant in a case of this type, both by the jury in its fact-finding process and by the court in determining whether the evidence is capable of convincing beyond a reasonable doubt.
 
 
 39
 The principles enunciated in Dellinger are applicable here because the acts charged against these and other defendants[1] were committed as part of a group undertaking involving a legal aim, a protest against unfair treatment of Indians.
 
 
 40
 Because the parties contemplated aims protected by the First Amendment, it is this Court's duty to carefully examine the specific intent of each party so that the illegal aims of one or several defendants are not mistakenly imputed to an innocent party. The trial court apparently engaged in precisely the sort of inferential process which the strictissimi juris doctrine is designed to avoid. Although Ms. Red Feather admitted that she was attempting to enter Wounded Knee and it could be inferred that she intended to carry the guns and ammunition with her, none of the other defendants acknowledged similar aims. The only evidence that Sioux Casper, Martha Ellen White Bear and Joseph Bill harboured the necessary specific intent was that they were discovered lying in the grass near the cache of weapons. None of the weapons were found on their person or in their possession, nor did any of these defendants express an intent to use the weapons against law enforcement officers or supply them to parties to fire upon officers at Wounded Knee. Of course, the right of each to enter Wounded Knee to protest and to otherwise lawfully assist the occupants is protected. Because of the importance traditionally attached to the speech-related aims of these defendants, the circumstantial inferences necessary to establish the requisite specific intent must be proven with greater particularity than the government provided. The convictions of Casper, White Bear and Bill can only be affirmed by piling inference on inference and by disregarding their rights to go to Wounded Knee to participate in the demonstration.
 
 
 41
 The evidence is also insufficient as to Red Feather and Land because no showing was made that they knew that there was a civil disorder at Wounded Knee at the time they were arrested or that they knew that federal law enforcement officers were on duty at Wounded Knee at the time.
 
 THE POSSE COMITATUS ISSUE
 
 42
 In my judgment, the legal standard adopted by Judge Van Sickle was an improper one. He expressed the standard as follows:
 
 
 43
 Were Army or Air Force personnel used by the civilian law enforcement officers at Wounded Knee in such manner that the military personnel subjected the citizens to the exercise of military power which was regulatory, proscriptive, or compulsory in nature, either presently or prospectively?
 
 
 44
 Under this standard, the military is free to loan its equipment to law enforcement officials, to have its personnel on the scene to advise as to the use of the equipment, and to maintain and service the equipment.
 
 
 45
 Chief Judge Warren K. Urbom of the District of Nebraska viewed the posse comitatus statute in another light. He would find a violation whenever military personnel, absent appropriate Presidential authorization, are present at the scene of a civil disorder and influence the decisions of law enforcement officers lawfully on the scene, or whenever the military personnel are used to service and maintain equipment on loan to these law enforcement officers.[2] He would not find a violation if a simple loan of equipment or supplies is involved. United States v. Jaramillo, 380 F.Supp. 1375 (D.Neb.1974), appeal dismissed, 510 F.2d 808 (8th Cir. 1975). See also United States v. Banks, 383 F.Supp. 368 (W.D.S.D.1974).
 
 
 46
 I agree with the standard laid down by Judge Urbom with respect to the use of military personnel to influence the decisions of law enforcement officers or to service and maintain military equipment. Thus, I would reverse for a new trial. I would leave to another day the question of whether a simple loan or transfer of military supplies or equipment to law enforcement agencies lawfully on the scene, pursuant to the Economy Act, 31 U.S.C. § 686, without appropriate Presidential authorization, is in itself violative of the law.
 
 
 
 [1]
 The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota
 
 
 [2]
 Jury was waived and the cases were submitted to the court upon a stipulated record consisting of a stipulation of facts with respect to the conduct and activity of each defendant on trial; transcripts of evidence in the following trials and hearings: United States v. Means, 383 F.Supp. 368 (D.S.D.1975); United States v. Jaramillo, 380 F.Supp. 1375 (D.Neb.1974), appeal dismissed, 510 F.2d 808 (8th Cir. 1975); United States v. Red Feather, 392 F.Supp. 916 (D.S.D.1975); United States v. Williams, 372 F.Supp. 65 (D.S.D.1973) (hearing on Motion to Suppress); and numerous exhibits
 
 
 [3]
 Based upon the evidence included in the stipulated record, the trial court concluded that the government had proven the existence of a civil disorder and the fact that the disorder resulted in interference with a federally protected function. Those conclusions are amply supported by the record and are not seriously contested herein
 
 
 [4]
 The history of the Wounded Knee occupation need not be recited once again by this court. An accurate account of the events during this period may be found in United States v. Jaramillo, 380 F.Supp. 1375, 1376-77 (D.Neb.1974), appeal dismissed, 510 F.2d 808 (8th Cir. 1975)
 
 
 [5]
 Appellants contend that Ms. Red Feather's post-arrest declaration made out of the presence and hearing of the other defendants at her interview by the FBI agents is inadmissible against the other defendants. The trial court's memorandum and order does not indicate that he considered this evidence against any defendant other than Red Feather. In addition, we find the evidence in the record apart from the Red Feather declaration is sufficient to sustain appellants' convictions under section 231(a)(3)
 
 
 [6]
 Cf. United States v. General Motors Corp., 384 U.S. 127, 141 n.16, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966)
 
 
 [7]
 The statute provides:
 Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.
 18 U.S.C. § 1385 (1970).
 
 
 [8]
 Judge Van Sickle noted that by stipulation of the parties in the instant cause Judge Bogue's ruling on the posse comitatus issue was before him on a joint motion for reconsideration. United States v. McArthur, supra, 419 F.Supp. at 189 n.1
 
 
 [9]
 In addition to providing its own detailed summary of the military involvement at Wounded Knee, the district court also quoted from the findings of two other district courts on this issue. United States v. McArthur, supra, 419 F.Supp. at 192-193 nn.2 & 3, citing from United States v. Jaramillo, supra, 380 F.Supp. at 1379 and United States v. Red Feather, supra, 392 F.Supp. at 921
 
 
 [10]
 The district court concluded that of the three prior decisions discussing this issue, only United States v. Jaramillo, supra, 392 F.Supp. at 916, was a final decision which could be arguably afforded collateral estoppel effect
 
 
 [1]
 Four other defendants were acquitted on the same charges by this trial court
 
 
 [2]
 In Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154, rehearing denied, 409 U.S. 901, 93 S.Ct. 94, 34 L.Ed.2d 165 (1972), the Supreme Court implicitly sanctioned the use of army observers at Wounded Knee for the purpose of assessing the situation in the event federal troups should be called under 10 U.S.C. § 331. The army personnel at Wounded Knee went beyond the role sanctioned by the Supreme Court in Laird. They influenced the decisions of the law enforcement officers and serviced and maintained the equipment on loan to the BIA and the United States Marshals