**STATE of Iowa, Appellee,**

v.

**Rubin Ellist JONES, a/k/a Rubin Oakley, Appellant.**

**No. 60259.**

Supreme Court of Iowa.

Nov. 22, 1978.

Rehearing Denied Jan. 19, 1979.

Alfredo G. Parrish, Des Moines, and Lawrence F. Scalise and Thomas J. Levis of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Faison T. Sessoms, Jr., Asst. Atty. Gen., and Terry Wright, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, UHLENHOPP and HARRIS, JJ.

REYNOLDSON, Chief Justice.

July 8, 1976, Johnney White, Sr., was attacked on a Des Moines street and repeatedly knife-cut by Jimmy Wayne Wright. On the next day Wright was shot and killed as he ran from a friend's house. The grand jury indicted Johnney White, Jr., White's son, and Archie Ray Daniels and this defendant, White's stepsons, accusing them of Wright's murder.

Defendant pled not guilty and successfully moved for separate trial. He was convicted of first-degree murder and sentenced to life imprisonment. We now affirm the judgment entered by trial court.

On appeal defendant raises six grounds for reversal, treated in the divisions which follow.

## I. *Sufficiency of evidence.*

Defendant contends trial court's failure to sustain his motions for directed verdict was error because there was insufficient evidence to sustain his conviction. Specifically, he claims there was no evidence that he knowingly participated in or encouraged Wright's murder.

■ The State proceeded on the theory that defendant was an aider and abettor in the murder. See § 688.1, the Code 1975; § 703.1, Supplement to the Code 1977. Aiding and abetting means to assent to or lend countenance or approval to a criminal act, either by active participation in it or by in some manner encouraging it. Of course, the State must prove defendant's participation or encouragement was done with knowledge of such act. *State v. Lott*, 255 N.W.2d 105, 107 (Iowa 1977); *State v. Watson*, 242 N.W.2d 702, 706 (Iowa 1976).

■ In reviewing these rulings we view the evidence in the light most favorable to the State, without regard to contradiction or inconsistencies and assisted by all reasonable inferences. If there is substantial support for the verdict in the record, the jury

verdict is conclusive. *State v. Overstreet*, 243 N.W.2d 880, 883–84 (Iowa 1976).

■ The evidence in this case would permit the jury to find the following facts.

After the attack on White, Sr., Wright sought refuge at Gloria Richardson's home at 1126 Ninth Street, Des Moines. The next day defendant, accompanied by two unidentified women, came to the door. After some discussion they left, but subsequently returned with Daniels and White, Jr.

Defendant and others searched for Wright throughout the house. Apparently by this time Wright had left the home and was hiding in an adjoining alley. Daniels then asked Gloria's son, Michael, where Wright had gone. Michael responded he had gone "over to Oak Ridge." Defendant and his companions were getting into cars to go there when one of the women, looking down the alley, shouted, "[T]here he is." Defendant and his companions vacated the cars.

Several persons testified they saw defendant chase Wright. Fifteen-year-old Cornelia Richardson, who has one artificial eye and wears glasses, testified she saw defendant hit Wright on the head with a bottle. According to the medical examiner, a blow fractured Wright's skull and could have been the cause of death, absent the subsequent gunshot wounds. Clark, a neighbor, observed two men and a woman chase Wright into a neighboring yard. From his descriptions and other testimony the jury could find the two men were defendant and White, Jr.

There was no testimony relating to the actual shooting. Cornelia Richardson heard Wright plead for his life. Clark heard one of the three say, "Shoot, shoot him." Later Clark observed White, Jr., tuck what may have been a gun down the front of his pants.

Defendant assigns no weight to Cornelia's testimony. Although the State's failure to find the bottle she said defendant used weakens her words, they are not rendered incredible. Her testimony is corrobo-

rated by the medical examiner. Defendant also attacks Clark's testimony because a doctor testified he had just released defendant from the hospital and the latter was not capable of "a great deal of fast mobility." We do not believe this demolishes Clark's testimony.

The jury could have found defendant brought the triggerman to the scene, joined the search for Wright, participated in his pursuit, struck him with a bottle, stood by while he was shot three times, and then left in an automobile with his two male companions.

The evidence was sufficient. Trial court committed no error in overruling the motions for directed verdict.

## II. *Collateral estoppel.*

■ After a jury trial White, Jr., was convicted of second-degree murder. Defendant asserts the State's failure to secure a first-degree murder conviction in White's trial precludes defendant's conviction for that crime, citing *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and *United States v. Casper*, 541 F.2d 1275 (8th Cir. 1976), cert. denied, 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977). This issue was first raised on motion for new trial. By considering the merits of this complaint we do not intimate it was timely raised.

This court analyzed the *Ashe* rule in *State v. Stergion*, 248 N.W.2d 911, 913–14 (Iowa 1976), *State v. Pospishel*, 218 N.W.2d 602, 604 (Iowa 1974), *State v. O'Kelly*, 211 N.W.2d 589, 593–94 (Iowa 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), *State v. Young*, 211 N.W.2d 352, 354 (Iowa 1973), and *State v. Gowins*, 211 N.W.2d 302, 303–04 (Iowa 1973). We have found no indication the United States Supreme Court has retreated from its concept that collateral estoppel in a criminal case is a part of the fifth amendment's guarantee against double jeopardy and "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated *between the same parties* in any future lawsuit." *Ashe*, 397 U.S. at 443, 90

S.Ct. at 1194, 25 L.Ed.2d at 475 (emphasis supplied).

Defendant relies on *Casper* for the proposition that identity of parties is not necessarily a requirement of collateral estoppel in this case. The *Casper* court only noted a dictum in trial court's decision which advanced such a theory. *Casper* rejected a suggestion to extend collateral estoppel to questions of law. 541 F.2d at 1278–79.

With commendable candor defendant acknowledges our cases which hold:

> [W]hen a defendant is charged with aiding and abetting a judgment in a separate trial acquitting the actual perpetrator is neither res judicata nor a bar to the prosecution of defendant. A judgment against one, whether of conviction or acquittal, has no bearing on the other.

*State v. Cunha*, 193 N.W.2d 106, 109 (Iowa 1971). See also *Watson*, 242 N.W.2d at 706; *Young*, 211 N.W.2d at 353; *State v. Brown*, 172 N.W.2d 152, 155 (Iowa 1969). This case law is now embodied in our statutory law. § 703.1, Supplement to the Code 1977 ("The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part he or she had in it, and does not depend upon the degree of another person's guilt."). This rule is consistent with the refusal elsewhere to relax the traditional identity of parties requirement. See, e. g., *United States v. Brown*, 547 F.2d 438, 444 (8th Cir.), cert. denied, 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977). See generally Annot., 9 A.L.R.3d 203 at § 3 (1966).

We need not decide today whether to relax this rule where the relevant conduct of two separately tried defendants is identical. Defendant makes no showing of factual similarity. In *Stergion* we held a defendant relying on collateral estoppel must make an adequate record to show the verdict in the prior case necessarily foreclosed a factual issue essential to the subsequent prosecution. We held defendant did not meet this burden:

> Defendant never offered the "pleadings, evidence or charge" in the manslaughter

trial for the court's examination. He merely appended to his dismissal motion several of the jury instructions from the prior proceeding.

248 N.W.2d at 913, quoting *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76. In the case before us, defendant failed to make this required record upon which trial court could have determined whether identical issues of ultimate fact were presented in both trials.

We hold trial court did not err in overruling defendant's motion on this ground.

III. *Impeachment by prior conviction.*

■ Before his 1976 trial, defendant filed a motion for an order prohibiting the State from using his 1968 perjury conviction for impeachment purposes upon cross-examination. Ruling was deferred until just before defendant took the stand. But see *State v. Martin*, 217 N.W.2d 536, 543 (Iowa 1974). After a hearing with the jury absent, trial court ruled the State could inquire into the nature of the conviction.

On defendant's direct examination, this exchange then took place:

Q. Have you ever been convicted of a felony? A. Yes, I have.

Q. And what was the felony? A. Perjury.

On cross-examination defendant was asked again:

Q. It is my understanding that you have been convicted of a felony crime of perjury, is that correct? A. Yes, it is.

Defendant contends trial court abused its discretion by its ruling on his motion. The State claims there was no abuse of discretion. It also asserts defendant waived any error by disclosing the conviction on his direct examination. We first examine the issue of waiver.

We have reached the merits of this impeachment issue on several occasions when the prior conviction was acknowledged by the witness on direct examination. See *State v. Burt*, 249 N.W.2d 651, 653 (Iowa 1977); *State v. Miller*, 229 N.W.2d 762, 769 (Iowa 1975); *Martin*, 217 N.W.2d

at 544. In each instance, however, the evidence had been ruled admissible before the witness' testimony.

The State relies on *United States v. McCord*, 137 U.S.App.D.C. 5, 420 F.2d 255 (1969), to support its waiver argument. There, after trial court ruled one of defendant's prior convictions could be used for impeachment, defendant on direct examination disclosed the conviction. Judgment was affirmed because (1) defendant made no objection to the ruling, and (2) "defense counsel, not the Assistant United States Attorney, introduced the 1954 conviction, thereby softening its impact on the jury." 137 U.S.App.D.C. at 8, 420 F.2d at 258.

Other courts have made similar statements under varying circumstances. *United States v. Dorman*, 496 F.2d 438, 440–41 (4th Cir.), cert. denied, 419 U.S. 945, 95 S.Ct. 214, 42 L.Ed.2d 168 (1974); *United States v. Kiraly*, 445 F.2d 291, 292 (6th Cir.), cert. denied, 404 U.S. 915, 92 S.Ct. 230, 30 L.Ed.2d 189 (1971); *People v. Perrin*, 247 Cal.App.2d 838, 844, 55 Cal.Rptr. 847, 851 (1967); *State v. Scoggins*, 199 Kan. 108, 111, 427 P.2d 603, 605 (1967); *Commonwealth v. Garrison*, 398 Pa. 47, 52, 157 A.2d 75, 77 (1959). We find it significant that only in *McCord* and *Kiraly* were there pre-testimony hearings and rulings on admissibility of the convictions.

However, other courts have declined, either expressly or impliedly, to find waiver from acknowledgment of prior convictions on direct examination, when the issue of its admissibility already had been adjudicated in favor of the prosecution. See *United States v. Puco*, 453 F.2d 539, 541 n.6 (2d Cir. 1971), cert. denied, 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973); *United States v. Yarbrough*, 352 F.2d 491, 493 (6th Cir. 1965); *United States v. Vanco*, 131 F.2d 123, 125–26 (7th Cir. 1942); *Eubanks v. State*, 516 P.2d 726, 730 (Alaska 1973); *Nicholas v. State*, 49 Wis.2d 683, 687–91, 183 N.W.2d 11, 14–16 (1971).

The same judge who authored the *McCord* decision (upon which the State relies) spoke for the circuit court again in *United States v. Maynard*, 155 U.S.App.

D.C. 223, 476 F.2d 1170 (1973), and held there was no waiver in a situation similar to that which we now confront:

> [Defendant's] offer of the evidence was in submission to the ruling of the District Court. Defense Counsel objected to the prosecution's proposal, fully argued the matter to the trial judge, was bound by the ruling. As counsel he was under a restraint against rearguing a point that had been fully argued. We think he was fairly entitled to treat the ruling as definite and complete, and to do what he fairly could to limit the prejudicial impact of the ruling.

*Id.* 155 U.S.App.D.C. at 228, 476 F.2d at 1175.

We are persuaded by this rationale. Where the issue is fully argued and trial court, carefully apprised of defendant's objection, rules evidence of prior convictions admissible, we are not convinced defendant must abandon all trial tactics to preserve error. We hold defendant has not waived his right to assert error in this instance.

■ Thus defendant's contention must be examined on its merits: Did trial court err in holding the 1968 perjury conviction could be introduced as impeachment evidence?

Our criteria for making this determination have been laid down in *Martin* and its progeny. 217 N.W.2d at 542. See *State v. Burt,* 249 N.W.2d at 653; *State v. Brewer,* 247 N.W.2d 205, 213 (Iowa 1976); *State v. Miller,* 229 N.W.2d at 769–70.

Defendant concedes perjury involves dishonest and false statement, the first prong of *Martin.* But he argues the conviction was too remote, thus the value of the conviction for impeachment was outweighed by its capacity to improperly influence jurors.

In *Martin,* 217 N.W.2d at 541 and in *Miller,* 229 N.W.2d 769–70, we quoted the following from *Gordon v. United States*:

> The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, *if it occurred long before and has been followed by a legally blameless life,* should generally be excluded on the ground of remoteness.

127 U.S.App.D.C. 343, 347, 383 F.2d 936, 940 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968) (emphasis supplied).

The federal rule provides a ten-year cutoff, beyond which convictions should not be admitted unless the court determines, on the basis of specific facts, that probative value substantially outweighs prejudicial effect. Rule 609(b), Federal Rules of Evidence, discussed in Annot., 67 A.L.R.3d 824 (1975), and Note, Impeachment by Prior Criminal Conviction—Federal Rule of Evidence 609, 27 Drake L.Rev. 326, 352–53 (1978).

This jurisdiction has not fixed a specific period of years as a yardstick for measuring whether a witness' felony conviction is admissible for impeachment. In *State v. Thornburgh,* 220 N.W.2d 579, 583–84 (Iowa 1974), we held it was an abuse of discretion for trial court to admit into evidence over proper objection defendant's fourteen-year-old felony conviction. In *Miller* we held there was no abuse of discretion in allowing the State to introduce impeachment evidence of three 11-year-old convictions. 229 N.W.2d at 769–70. The remoteness in *Miller* was mitigated by an intervening, recent conviction, refuting defendant's claim that his rehabilitation rendered the old convictions irrelevant and prejudicial. *Id.*

In the case before us defendant's perjury conviction occurred eight years prior to trial. It would be admissible for impeachment purposes in federal court. Moreover, the record made at the in-chambers trial court hearing revealed that in 1975 defendant was convicted of malicious injury to a motor vehicle. His perjury conviction has not been "followed by a legally blameless life." *Gordon,* 127 U.S.App.D.C. at 347, 383 F.2d at 940. Defendant's claim of rehabilitation and exemplary behavior following his release from parole on the felony conviction was refuted.

We hold trial court did not abuse its discretion in ruling this impeachment evidence was admissible.

## IV. *Hearsay.*

██ Defendant asserts hearsay was improperly admitted over his objections on two occasions.

On the first occasion Michael Richardson, after testifying about defendant's second visit to, and subsequent search of, the Richardson residence, was permitted to testify Daniels "asked me if I knew where [Wright] had went and I told him he's probably in Oak Ridge." Defendant timely objected that testimony about Daniels' question was hearsay and could not be admitted because no independent evidence had established the declarant Daniels was a coconspirator.

At a prior in-chambers offer and conference concerning the question and answer, the prosecution stated the evidence was offered "to show at this stage that five people were looking for Jimmy Wayne Wright."

Daniels' question, "Do you know where Wright is?" was offered in evidence only to show it was said. There is no assertion inherent in the question. An out-of-court utterance is not hearsay unless it contains an assertion of fact and is offered to prove the truth of that assertion. *State v. Leonard,* 243 N.W.2d 887, 890 (Iowa 1976), and citations. We hold Daniels' nonassertive utterance is not hearsay and was properly admitted into evidence. We have no reason to determine whether the statement was admissible as a statement by a coconspirator.

The second instance of claimed hearsay also occurred during Michael Richardson's testimony. Richardson testified that after his response to Daniels' question the searchers got in the cars in order to proceed to Oakridge.

Q. And what, if anything, did you observe at that time? A. Nothing. We was just getting ready to go and somebody hollered, there he [presumably referring to Wright] is.

MR. PARRISH: Just a minute. I object to that as hearsay as to this defendant.

THE COURT: Overruled.

██ Any error in this instance was not properly preserved. Where, as here, the objection is late and follows the answer, a motion to strike, coupled with an application to have the objection precede the answer or an excuse for tardiness, must be made. *State v. Reese,* 259 N.W.2d 771, 775 (Iowa 1977), quoting *State v. Hinkle,* 229 N.W.2d 744, 748 (Iowa 1975); *State v. Hendren,* 216 N.W.2d 302, 305 (Iowa 1974).

██ Passing this point for the moment, the second statement is not hearsay because it was not offered to prove the truth of the matter asserted. See *State v. Frazer,* 267 N.W.2d 34, 36–37 (Iowa 1978); *State v. Wycoff,* 255 N.W.2d 116, 118 (Iowa 1977). This utterance was not offered to show someone had seen the victim, or where he was then hiding. The purpose of this testimony was to show only that the utterance was made, because it explains why the five searchers then left the cars.

We find no trial court error in these rulings.

## V. *Leading and suggestive questions.*

██ Defendant asserts he was denied a fair trial because of the prosecutor's continued use of leading and suggestive questions. This was one of the grounds urged in defendant's mistrial motion made when the State rested. He points to 27 instances in the transcript in which he asserts "leading questions were used and objected to." The State identifies eight of these instances as ones in which the objection was not made until after the answer and no error was preserved. See our discussion in division IV above. In five more instances trial court failed to rule on defendant's objection and defendant made no request for rulings. See *State v. Pelelo,* 247 N.W.2d 221, 226 (Iowa 1976). In six other instances, defendant's objections were sustained.

While unfortunately the prosecutor pursued a pattern of leading questions, the questions were not "loaded." Rather, many were designed to encourage testimony from young witnesses who came across in the transcript as unenthusiastic about their role in the trial.

Viewing the record as a whole, we hold defendant was not deprived of a fair trial and district court did not abuse its discretion in overruling defendant's motion on this ground.

## VI. *Jury misconduct.*

■ Finally, defendant's motion for new trial alleges two instances of jury misconduct.

During jury voir dire the defense counsel asked the panel if anyone knew any of the defense witnesses, then identified by counsel. Apparently no juror volunteered such acquaintance.

During hearing on the new trial motion defense counsel stated witness Linda James knew one of the jurors. No evidence by affidavit or testimony was elicited from either James or the unnamed juror. Trial court made it clear counsel's statements were inadequate to raise his claim. See *State v. Feddersen*, 230 N.W.2d 510, 513–14 (Iowa 1975).

That James knew one of the jurors does not establish the juror knew or recognized James. In addition, defendant made no effort to establish this alleged misconduct resulted in prejudice to his cause. *State v. Hall*, 235 N.W.2d 702, 730 (Iowa 1975).

■ Defendant also failed to show any prejudicial effect when another juror testified he took notes during trial. The juror stated that although he carried his notes into the jury room, neither he nor anyone else used them during deliberations.

Section 784.1, The Code, clearly permits jurors to take into the jury room "any notes of the testimony or other proceedings taken in the trial by themselves or any of them." See generally *United States v. Campbell*, 138 F.Supp. 344, 348–53 (N.D.Iowa 1956).

We find no merit in these charges of jury misconduct.

The judgment entered by trial court is affirmed.

AFFIRMED.