**STATE of Iowa, Appellee,**

v.

**Dennis RAWLINGS, Appellant.**

No. 85–1021.

Supreme Court of Iowa.

March 18, 1987.

Rehearing Denied April 9, 1987.

Susan Conroy and Edward L. Wintroub, Council Bluffs, for appellant.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., David E. Richter, Co. Atty., and Joseph Hrvol and Drew Kouris, Asst. Co. Attys., for appellee.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

LARSON, Justice.

Dennis Rawlings and a codefendant were tried on charges of attempted murder. The jury returned three guilty verdicts on three counts against Rawlings: one of simple assault, Iowa Code §§ 708.1, 708.2(3) (1983), and two of assault with intent to inflict serious injury, Iowa Code §§ 708.1, 708.2(1) (1983). We affirm.

The charges arose out of an incident outside a bar in Carter Lake, Iowa, which resulted in the beating and stabbing of three victims. Through two photographic arrays, these victims and a bystander identified Rawlings as one of the persons responsible. On appeal, Rawlings argues (1) the photographic identification procedure was unduly suggestive, thereby creating a "very substantial likelihood of irreparable misidentification," under *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155 (1977); (2) his trial lawyer rendered ineffective assistance of counsel; and (3) it was error to admit evidence of a statement, "Dennis, what are you doing?" made by an unidentified person at the scene of the assault.

I. *The Identification Procedure.*

■ The analysis of an undue suggestiveness claim is separated into two parts. The first consideration is whether the out-of-court identification procedure was "impermissibly suggestive." *Manson*, 432 U.S. at 108–09, 97 S.Ct. at 2250, 53 L.Ed.2d at 150. If so, the totality of the circumstances must be examined to determine whether the procedure gave rise to " 'a very substantial likelihood of irreparable misidentification.' " *Id.* at 116, 97 S.Ct. at 2254, 53 L.Ed.2d at 155 (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968)). Anything less than a very substantial likelihood of misidentification is evidence for the jury to weigh. *Id.* *See*

*State v. Mark,* 286 N.W.2d 396, 403–04 (Iowa 1979).

Rawlings claims that the physical characteristics of the persons in the first array, consisting of five photographs, lacked similarity in age and other features such as facial hair. He also claims the photographs, which were "mug shots," improperly showed identifying information such as height, weight, and age of the subjects. He also complains that the suggestiveness of this procedure was enhanced by the fact that his photograph was the only repeat in the second, seven-photograph array.

■ Although there are differences between Rawlings and the other photographs in the first lineup, it appears that there was at least a reasonable effort to harmonize the photographs. Those photographs in the second array more closely resembled Rawlings and, despite the fact he was the only repeat in that array, we do not believe it was impermissibly suggestive. It has been said that "due process does not require the police to scour their files to come up with a photographic display that would eliminate all subtle differences between individuals." *United States v. Bubar,* 567 F.2d 192, 199 (2d Cir.1977). A reasonable effort to harmonize the lineup is normally all that is required. *United States v. Mefford,* 658 F.2d 588, 590 (8th Cir.1981).

Even assuming that the photographic lineups were suggestive, it still must be shown that there was a very substantial likelihood of irreparable misidentification. *Manson,* 432 U.S. at 116, 97 S.Ct. at 2254, 53 L.Ed.2d at 155; *State v. Mark,* 286 N.W.2d at 405. To make such a determination, the totality of the circumstances is examined. *Id.* at 405.

The factors to be examined in determining the effect of suggestiveness are set forth in *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972):

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the

criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

The question of whether a substantial likelihood of misidentification exists focuses upon whether the identification was reliable. *Id.*

■ In this case, the three victims, and another witness, saw their assailants at close range, and they all testified at trial that Rawlings was one of them. We conclude that, under the totality of the circumstances, a substantial likelihood of irreparable misidentification has not been established.

## II. *Ineffective Assistance of Counsel.*

Rawlings' next contention is that he was denied effective trial counsel. He argues that counsel should have introduced medical testimony which would have shown he was physically incapable of assaulting the victims in the manner testified. The record reveals that his lawyer was aware of this evidence but chose not to introduce it, fearing a "protracted battle" over defendant's physical limitations. The lawyer was concerned that the issue of his physical condition might distract the jury from his primary defense theory, which was that he was not present.

Generally, ineffective assistance claims are not adjudicated on direct appeal; only in rare cases will the trial record alone be sufficient to resolve the claim, *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). We believe this issue should be preserved for postconviction proceedings to allow the development of a more complete record on the ineffectiveness issue.

## III. *The Hearsay Issue.*

John Bilyeu, a witness to the assault, was allowed to testify that, during the fight, he heard someone say, "Dennis, what are you doing?" He did not know who asked the question, but he testified that it was a male voice, that it came from the

direction of the assault, and that it was asked while the assault was in progress.

For an out-of-court utterance to be hearsay, it must be a statement. Iowa R.Evid. 801(c). A statement is defined in our rules as an oral or written assertion or conduct intended as an assertion. Iowa R.Evid. 801(a). The State argues that the question "Dennis, what are you doing?" is not an assertion and therefore not hearsay.

A great many out-of-court utterances fall within such categories as greetings, pleasantries, expressions of gratitude, courtesies, *questions*, offers, instructions, warnings, exclamations, expressions of joy, annoyance, or other emotion, etc. Such utterances are not intentional expressions of facts or opinions. They are not assertions, at least for purposes of the hearsay rule. Thus they are not hearsay.

Binder, *Hearsay Handbook* 15 (2d ed. 1983) (emphasis added).

■ A related issue was addressed in *State v. Jones*, 271 N.W.2d 761 (Iowa 1978), in which a witness testified that another person had asked him, "Do you know where Wright is?" The defendant asserted that the utterance was hearsay and improperly admitted. We held it was not an assertion, thus not hearsay. *Id.* at 767. In the present case, the utterance concerning "Dennis" was couched as a question but it was phrased in such a manner as to make it an implicit assertion of the fact: that a "Dennis" was present. It is thus distinguishable from the question involved in *Jones*, because in *Jones* the question contained no inherent assertion of fact. *Jones*, 271 N.W.2d at 767. Here, the State conceded at trial that the utterance was offered to prove that Rawlings was present. We believe the statement was an assertion for hearsay purposes.

The State argues that, if the statement was hearsay, it nevertheless was admissible because it falls under the excited utterance exception. Iowa R.Evid. 803(2) ("A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."). (The State also argues that it is admissible as a present sense ʾimpression, under Iowa Rule of Evidence 803(1); *State v. Flesher*, 286 N.W.2d 215, 216 (Iowa 1979), but we need not address that question because of our holding on the excited utterance ground.)

■ It is not clear whether the district court overruled the hearsay objection because of its view that the utterance was not an assertion or because it fell under one of the exceptions. The ruling suggests it could have been based on either:

> This person [the witness to the statement] is not a victim. His memory was piqued by statements made or conversations had rather *shortly after the alleged incident occurred,* and it's the opinion of the court that it's not hearsay, and that's going to be my position.

(Emphasis added.) In any event, we will affirm a ruling which admits evidence over a hearsay objection on any proper ground appearing in the record, even if it was not raised below. *State v. McCowen*, 297 N.W.2d 226, 227 (Iowa 1980); *State v. Nowlin*, 244 N.W.2d 596, 600 (Iowa 1976).

■ Under rule of evidence 803(2), the excited utterance exception will apply if the statement relates to a startling event and if the declarant was under the stress of that event at the time of the statement. The defendant argues that the excited utterance exception cannot apply in this case because the identity of the declarant is unknown, depriving the utterance of necessary indicia of reliability. *See State v. Brown*, 341 N.W.2d 10, 14 (Iowa 1983). A declarant's personal knowledge of the facts, however, may be inferred from the utterance itself. Binder, *supra*, § 2.04, at 100–01. *See* Iowa R.Evid. 602 ("Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.").

In *State v. Lenarchick*, 74 Wis.2d 425, 449, 247 N.W.2d 80, 93 (1976), a witness testified to a statement made by a person known as Popeye who said that the defendant had injured the victim. The defendant

argued that the excited utterance exception would not apply because there was no evidence to show that Popeye had actually witnessed the event. The Wisconsin court said:

> It is reasoned that the inference that the declarant saw the event should be permitted from the utterance itself and from the circumstances in which it was given. The rationale of the excited-utterance exception is that the utterance stems from the nonrational, and thus objectively truthful, process of the person at the event. Accordingly, it belies the rationale of the exception to conclude that the declarant made the excited utterance on the basis of an event of which he had no knowledge.

In discussing the excited utterance exception in the context of a statement by a bystander, Wigmore has stated that: "In a few courts, the declarations of a mere bystander have been excluded. But, in the greater number, no such discrimination is made,—assuming, of course, ... that the bystander's declarations relate only to that which has come under his observation." VI J. Wigmore, *Evidence in Trials at Common Law* § 1755, at 228–30 (1976). Wigmore also quotes from an old English case:

> Courts, so far as they can, are disposed to receive in evidence whatever can throw any light on the matter in issue and advance the search after truth. No doubt, for that reason, in the case of an exclamation by anyone in a crowd, when an accident occurs, and the conduct of a particular person is in question, it may be asked whether someone did not call out "shame!"; for it is part of the "res gestae."

*Milne v. Leisler*, 7 H. & N. 786, 796, 158 Eng.Rep. 686, 690 (1862).

A more recent case, *Jackson v. United States*, 359 F.2d 260 (D.C.Cir.1966), reached a similar result. In that case, the defendant was prosecuted for robbery. The victim testified that a number of persons at the bus stop yelled "that is him that is running" without identifying the declarants. The court held the evidence was admissible. *Id.* at 261–62.

 The circumstances under which the utterance was made established sufficient trustworthiness to make it admissible. Any questions as to the interpretation of a statement or the weight to be given it, were for the jury. *See United States v. Earley*, 657 F.2d 195, 198 (8th Cir.1981); *Wright v. Swann*, 493 P.2d 148, 153 (Ore. 1972); Binder, *supra*, at 105. We conclude that it was not error to admit the statement in question.

We find no basis for reversal.

AFFIRMED.