# IN THE COURT OF APPEALS OF IOWA

No. 19-0035
Filed March 18, 2020

**WALTER HOSKINS IV.,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

Walter Hoskins appeals from the summary dismissal of his second application for postconviction relief. **AFFIMRED.**

Shawn Smith of The Smith Law Firm, PC, Ames, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and May and Greer, JJ.

**MAY, Judge.**

Walter Hoskins appeals from the summary dismissal of his second application for postconviction relief (PCR). We affirm.

## I. Facts and Prior Proceedings

We previously summarized the facts of Hoskins's underlying conviction as follows:

> On the evening of July 4, 2006, Waterloo police officers noticed Walter Hoskins IV and his cousin, Daytron Wise, in front of their grandmother's house shooting off fireworks. Officers Matt McGeough and Steve Bose went to the home due to this illegal activity and because there were outstanding arrest warrants for both men. Hoskins and Wise were arrested. A search incident to arrest revealed Hoskins had $174 in cash, Wise had $210, and both men had cell phones on them. As they were being placed in the back of a patrol car, Hoskins yelled at the officers not to go in the house because his grandmother, Alberta Hoskins, was sleeping.
>
> The officers knocked on the door, and then knocked on windows in an effort to alert whomever was inside that they were taking Hoskins and Wise to the police station, but no one responded. The officers then went around the outside of the house attempting to rouse someone when officer Bose saw baggies stuffed inside a detached drain pipe. He pulled out the baggies and saw several of them had corners that were missing. There was no mud or debris on the baggies. The corners of baggies are often used as packaging for illegal drugs.
>
> The officers gathered up the fireworks in the yard and on the porch as evidence for a fireworks violation charge. From the porch, officer McGeough smelled the distinct and strong odor of marijuana. The door of the house was open, but the screen door was closed. Through the screen door officer McGeough saw a box of fireworks just inside the door. He opened the door to collect the fireworks, and saw two baggies of marijuana and a baggie of crack cocaine in a planter beside the door. The officers seized the illegal drugs.
>
> While the officers were present, Alberta returned home. Hoskins told her not to let anyone inside the home, and she refused the officers' request to search the home. The officers had activated a recorder in the patrol car, and one of the men said, "they haven't found it yet." Hoskins had previous felony convictions for drug-dealing in 2004. In April and May of 2006, officer McGeough had received information of drug dealing by Hoskins in Waterloo.

Sergeant Mark Meyer of the Tri-County Drug Task Force prepared an application for a search warrant of the house. A judge signed the search warrant. A search was conducted on July 5, 2006, which revealed large quantities of crack cocaine and marijuana, scales, cell phones, and baggies with torn corners.

*State v. Hoskins*, No. 07-0677, 2008 WL 1887314, at *1 (Iowa Ct. App. Apr. 30, 2008).

In April 2007, Hoskins was convicted of possession of a controlled substance (cocaine) with intent to deliver, failure to affix a drug tax stamp, and possession of marijuana. On direct appeal, this court affirmed his conviction and sentence (except for a DARE surcharge). *Id.* at *7.

Hoskins then pursued his first PCR action. He alleged, among other things, his trial counsel was ineffective for failing to challenge the sufficiency of the evidence. *Hoskins v. State*, No. 10-0902, 2012 WL 470230, at *3 (Iowa Ct. App. Feb. 15, 2012). The PCR court denied Hoskins's application. This court affirmed the PCR court. *Id.* at *7. Our opinion detailed the evidence inculpating Hoskins:

Police obtained a search warrant and searched Alberta's house, located at 439 Adams Street in Waterloo in the early morning hours of July 5, 2006. While searching the house, officers seized a great deal of the evidence from a bedroom in the northwest corner of the house. On the floor in the bedroom, officers—with the assistance of a dog—found a clear plastic bag with marijuana in it, on top of a wooden box.

Officers also encountered a large, green, plastic storage tote. Inside the storage tote, officers discovered a shoebox. The shoebox contained several clear plastic bags, filled with large, white chunks of a substance—crack cocaine. Among the items underneath the shoebox in the storage tote were a gun holster, a gold and black plastic bag with "quite a number of bullets and a box of ammunition," and a plastic glove. There was also a pair of plastic gloves on the bedroom floor. Officer McGeough stated the plastic gloves were significant because they are worn to keep fingerprints from getting on material. He also characterized the gun holster and bullets as common among people with large quantities of narcotics.

4

Two safes were found in the room. On an end table were a cell phone and a razor blade. Officer Matt McGeough testified that "[a]fter the crack has been hardened into chunks, [drug dealers] frequently use razor blades to kind of chip away and cut away the dosage units." Several more cell phones were found during the search. Officer Mark Meyer testified that cell phones are very transient in the crack cocaine business and it is common to see several different cell phones when people are dealing a quantity of drugs similar to this case.

A box protruding from a laundry basket also contained a large amount of clear plastic bags; at least two more boxes of clear plastic bags were found on the floor. Officer McGeough described the amount of clear plastic bags that were found as a "large amount." Officer Meyer described the quantity of baggies as "huge," adding, "I think there were more plastic baggies with the corners missing in this case than I have seen in almost any other [case] I have worked on and I have worked on a lot." Two small digital scales were found on an end table in the bedroom, with a much larger one found in a shoebox. Officer McGeough explained the scales were significant because when larger amounts of crack cocaine are found, scales are used to weigh out the larger quantities into smaller units to package and sell. Officers also found three bottles of supplements, which Officer McGeough explained, "are used to cut with the cocaine once it's being cooked up to turn into crack."

Officers also found a box from "Inner Security Products," sent to "Walter Hoskins" at the 439 Adams Street address. Inner Security Products sells body armor and bullet-proof vests. A bullet-proof vest was found in the northwest bedroom by the closet. It was noted by Officer McGeough that finding bulletproof vests or body armor is consistent with the quantity of narcotics and ammunition found in cases such as this one. In a second blue storage tote, officers found another cell phone.

In addition to the drug paraphernalia, officers found letters, documents, and paperwork belonging to Hoskins and Wise in the house. On the bed in the same northwest bedroom where the marijuana, crack cocaine, and drug paraphernalia were found, was a letter from the City of Waterloo, dated June 16, 2006, and addressed to "Walter Hoskins IV." The letter was addressed to 221 Cutler Street, Waterloo. A Nextel cell phone invoice for Wise, dated October 12, 2005, was found lying on top of clothes in a laundry basket. Under the letter was an envelope addressed to Wise at 439 Adams Street, postmarked September 24, 2005. Among the items listed in the Waterloo Police Department's "Property Tag Summary Report" are miscellaneous letters and papers belonging to Hoskins, which were found in the northwest bedroom. Additional documents belonging to Hoskins and Wise were found in the kitchen. Hoskins's

grandmother, Alberta, testified that on occasion, Hoskins and Wise stayed overnight at the house.

*Id.* at *4–5.

Next Hoskins sought federal habeas corpus relief.  He was unsuccessful.

*Hoskins v. Fayram*, No. 13-CV-35-LRR, 2014 WL 4988043, at *15 (N.D. Iowa Oct. 7, 2014).

Hoskins then filed this case, his second PCR action.  Hoskins relies on an affidavit from Wise, his cousin and co-defendant from the criminal trial.  It is dated October 30, 2017.  It states as follows:

> I Daytron Wise, states that the following is true and accurate to the best of my knowledge:
>
> On July 4th, 2006 I arrived at my grandmother's house at approximately 7:30.  When I arrived at the house there was no one there so I took the shoe box that contained drugs and stashed it inside of a green tote that I kept some of my clothes in.  I felt safe putting it there because I knew no one would enter the room without my permission since I was the one that often slept there, and kept my clothes in there.
>
> About an hour later, around 8:30 my cousin Walter Hoskins came to the house and we sat outside talking and smoking.  The police arrived a little while later and we both were arrested and put in the back of the same car.  At that point I realized that I had put drugs in the plant next to the door, so I became concerned and told Walter about the drugs in the plant.  We were taken down to the police station and put in a holding cell together.  Officer McGeough questioned us and told me that they were getting a warrant.  I never said anything to Walter about the other drugs in the tote because I did not want Walter to tell on me.
>
> The police searched the house and found the drugs that were in the tote.  I never told Walter that the drugs were in the house, and because we were co-defendants in the same trail my lawyer told me that I could not tell the judge that Walter did not have anything to do with the drugs, or had any knowledge of them, because that would automatically make me look guilty.  I asked her to try to get me a good plea that would get the charges against Walter dropped and she told me that they wanted him regardless so it was best for me to not say anything or we both would be in prison for a long time.

Its been 11 years and my conscious cannot let me continue to let a person that is innocent sit in jail for something that I am responsible for. At the time I was afraid with that being my first time in real trouble and I did not want to go against my lawyer's advice. Now I just want the truth to come out so that I can have this weight lifted off me. I am willing to take a lie detector about the drugs being mine as well.

The State filed a motion to dismiss, arguing the statute of limitations had passed. Hoskins resisted. Following a hearing, the PCR court entered an order dismissing Hoskins's PCR application. Relying on *Jones v. Scurr*, 316 N.W.2d 905, 907 (Iowa 1982), the court concluded Hoskins could not prevail on a newly-discovered-evidence theory because Hoskins "was aware of the potential defense that the drugs belonged to Mr. Wise at the time of trial." In the alternative, the PCR court also concluded that, even if Wise would have "offered the testimony set forth in his affidavit" at trial, it "would not have changed the result" given the "overwhelming" evidence of Hoskins's guilt.

Hoskins now appeals.

**II. Scope and Standard of Review**

"Postconviction proceedings are law actions ordinarily reviewed for errors of law." *Harrington v. State*, 659 N.W.2d 509, 519 (Iowa 2003) (citation omitted). "This includes summary dismissals of applications for postconviction relief." *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011).

**III. Discussion**

The State contends this case is controlled by *Jones*. We agree.

In *State v. Jones*, a grand jury had indicted three men—Jones and his half-brothers, White and Daniels—for the murder of a man named Wright. 271 N.W.2d 761, 763 (Iowa 1978). The State alleged Wright "was cornered, shot, and killed

after he ran from a friend's house into an alley." *Jones*, 316 N.W.2d at 906. At his trial, Jones testified to his own innocence. *Id.* at 908. Indeed, he "testified that he had not chased or struck the victim and that he had attempted to dissuade the codefendants, his half-brothers, from harming the victim." *Id.* Even so, Jones was found guilty of first-degree murder.

At his PCR hearing, Jones "presented two items of potentially exculpatory evidence." *Id.* at 906.

> The first was the testimony of a codefendant, [White], that he shot and killed [Wright] *even though Jones had tried to talk him out of it*. This testimony was not presented at Jones'[s] trial. It also was not presented in support of his motion for a new trial *because White exercised his fifth-amendment privilege against self-incrimination*. The second item of potentially exculpatory evidence was a deposition of a second codefendant, [Daniels]. Daniels stated that he had chased the victim and struck him with his cane, *and that Jones had done neither of these things*. The Daniels evidence was not presented at Jones'[s] trial or at the hearing on the motion for new trial *because Daniels was then a fugitive*.

*Id.* at 906–07 (emphasis added).

The PCR court concluded the White and Daniels evidence "was not newly discovered." *Id.* at 907. For this and other reasons, the court denied relief. *Id.*

Jones appealed. Our supreme court framed the issue on appeal as "whether evidence that is unavailable at trial, in this case due to the exercise by one codefendant of his fifth-amendment privilege against self-incrimination and due to the fugitive status of the other codefendant, is newly discovered when it becomes available after judgment." *Id.* at 908. "Other jurisdictions," the court noted, "are in disagreement on the resolution of this issue." *Id.* While "[s]ome jurisdictions find such evidence is newly discovered," other jurisdictions "do not find that unavailable evidence becomes newly discovered upon becoming

available." *Id.* at 908–09. Ultimately, our court sided with the "latter line of authority":

> We find that the latter line of authority, holding that exculpatory evidence that was unavailable, but known, at the time of trial is not newly discovered evidence, represents the better resolution of this issue. The requirement that evidence be newly discovered is intended to bring finality to litigation. Motions for new trials on the basis of newly discovered evidence are looked upon with disfavor because they do upset an end to litigation.
>     "[I]t is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his co-defendant by the filing of a recanting affidavit." In a case such as the present one, the already convicted codefendants have nothing to lose by making statements that exculpate defendant. We find that such statements should not automatically be allowed to interfere with the finality of the underlying trial. Otherwise, the underlying trial would always be tentative unless all codefendants and alleged accomplices testified fully at that trial. The evidence here, although unavailable, was known to defendant, and cannot be considered newly discovered.

*Id.* at 910 (alteration in original) (citations omitted).

So the *Jones* court held that the White and Daniels evidence "although unavailable, was known to defendant, and cannot be considered newly discovered."[1] *Id.*

---

[1] We have considered whether the holding in *Jones* was undermined by the supreme court's holding in *Schmidt v. State*, 909 N.W.2d 778, 781 (Iowa 2018) ("We now hold the Iowa Constitution allows freestanding claims of actual innocence, so applicants may bring such claims to attack their pleas even though they entered their pleas knowingly and voluntarily."). We do not believe it was. For one thing, the *Schmidt* majority did not mention *Jones*. Also, while *Schmidt* was decided in March 2018, *Moon v. State*, 911 N.W.2d 137 (Iowa 2018), was decided a month later. While *Moon* distinguished *Jones*, *Moon* gave no hint that *Jones* was no longer good law. *See Moon*, 911 N.W.2d at 151. Indeed, if *Jones* were not the law, there would have been no reason to distinguish it. So we consider *Jones* binding. *See State v. Hughes*, 457 N.W.2d 25, 28 (Iowa Ct. App. 1990) (reiterating the court of appeals does not overrule supreme court cases).

*Jones* applies here. Hoskins claims Wise's affidavit constitutes newly discovered evidence. The affidavit says that the drugs underlying Hoskins's conviction were actually not Hoskins's drugs. That cannot come as news to Hoskins. While Wise's affidavit was not available at the time of Hoskins's trial, the affidavit's core factual content—that Hoskins "did not have anything to do with the drugs"—was undoubtedly known to Hoskins at the time of his trial. Under *Jones*, that sort of evidence "cannot be considered newly discovered." *See id.*

Moreover, we agree with the district court that Wise's affidavit would probably not have changed the result in Hoskins's trial. As explained in our 2012 opinion from Hoskins's first PCR case, the evidence against Hoskins was indeed overwhelming.

Based on the law and the undisputed facts, we conclude Hoskins could not have prevailed on his newly-discovered-evidence claim. So we affirm the PCR court's dismissal of Hoskins's application.

**AFFIRMED.**