[Cite as *State v. Fairrow*, 2017-Ohio-220.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26936 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 14-CR-2741 |
| v. | : | |
| | : | (Criminal Appeal from |
| GLASSCO FAIRROW | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 20th day of January, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

AMY E. FERGUSON, Atty. Reg. No. 0088397, Ferguson Law Office, LLC, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

        {¶ 1} Glassco Fairrow appeals from his conviction and sentence following a jury

trial on one count of kidnapping, one count of attempted felonious assault, three counts

of misdemeanor assault, and one count of misdemeanor resisting arrest.[1]

{¶ 2} Fairrow advances two assignments of error. First, he contends the trial court erred in excluding statements that came within the excited-utterance exception to the hearsay rule. Second, he challenges the legal sufficiency of the evidence to sustain his convictions.

{¶ 3} The present appeal stems from an August 5, 2014 assault on a woman near Helke Park in Vandalia. The victim, Megan Finkelstein, had finished jogging shortly after 7:00 a.m. when she noticed Fairrow standing nearby. According to Finkelstein, Fairrow asked her to come over and talk to him. She declined. As Finkelstein proceeded to walk toward her car, she noticed Fairrow approaching her. Finkelstein began to run and scream, but Fairrow caught her. She testified that he grabbed her from behind, pulled her to the ground, and began choking her with both hands. Three nearby residents heard the commotion and assisted her. Two of them, Russell Wimmer and Jeffrey Snyder, pulled Fairrow off of Finkelstein, who was "turning blue" from being strangled. The third neighbor, Ralph Arnett, helped detain Fairrow until police arrived. All of the men who assisted Finkelstein sustained minor injuries. Fairrow proceeded to struggle with two police officers, resulting in one of them using a taser to subdue and arrest him.

{¶ 4} At trial, Fairrow did not dispute the foregoing facts. The defense argued that he was not guilty by reason of insanity (NGRI). Specifically, the defense asserted that Fairrow did not know what he was doing at the time of the incident, and therefore necessarily did not know the wrongfulness of what he was doing, because he was in the

---

[1] We note that the jury found Fairrow guilty on two counts of kidnapping, but the trial court merged them for purposes of sentencing.

"postictal" phase of a seizure. Fairrow testified on his own behalf and reported a history of seizures dating to 1986. He described feeling a seizure coming on while in the bathroom of his apartment shortly before his assault on Finkelstein. He testified that he felt the "aura" of an impending seizure and placed a cool rag over his face to try to prevent it. The next thing he remembered was interacting with police officers after the assault. Fairrow testified that he had no knowledge of calling out to Finkelstein, chasing her, knocking her down, or choking her. He claimed no awareness of these events while they were happening or afterward. The defense argued that Fairrow's seizure disorder, for which he indisputably was taking anti-seizure medication, constituted a mental disease or defect. Given that the effects of the seizure allegedly caused Fairrow not even to know what he was doing at the time of his offenses, the defense argued that he could not have known the wrongfulness of what he was doing.

{¶ 5} Fairrow also provided testimony from Cedric Ward, his brother. Ward testified about observing Fairrow have two seizures around 1989 or 1990. Ward recalled Fairrow being "violent" and "out of control" as he came out of those seizures. He stated that on one of the two occasions Fairrow fought and ran out of the house. Two expert witnesses, neurologist John Conomy and forensic psychiatrist Delany Smith, also testified for the defense. Conomy explained that the "postictal" phase of a seizure is the period following an active seizure event. He testified that a person in the postictal phase may be "groggy," "foggy in the head," "disoriented," and "not thinking straightly." He stated that such a person might become "belligerent, resistive, aggressive in that phase and need calming down or actual restraint and there's a lot of variation in that." Conomy opined that postictal acts of aggression may involve harm to others and may appear to be goal-directed even

though people in a postictal state "are not in charge of themselves," do not know what they are doing, and are unaware of their actions afterward. He acknowledged, however, that "being attacked by individuals in the postictal state of a seizure" is "a distinctly rare event[.]" Smith, the second defense expert, opined that when Fairrow attacked Finkelstein he "was suffering from a mental disease, a postictal delirium[,] and that as a result of that he was unable to know the wrongfulness of his actions." She acknowledged, however, that Fairrow's actions with regard to Finkelstein were "on the more-rare side" of possible postictal behavior.

{¶ 6} To rebut the NGRI defense, the State called its own expert witnesses. One of them, psychologist Thomas Martin, expressed his belief that Fairrow did not meet the legal definition of insanity because a seizure disorder is not a "severe mental disease or defect." A second expert, Anthony Byrd, agreed with "the notion that people can behave erratically[,] sometimes aggressively and violently during the throes of a seizure and sometimes afterwards[.]" Byrd also opined, however, that people involved in seizures "do not engage in purposeful, goal directed behavior[.]" Instead, their behavior is "resistive" because they are "in a confused state." With regard to Fairrow's attack on Finkelstein, Byrd stated:

> * * * [T]he truth of the matter is none of us know [with] 100 percent certainty what happened. We just don't because the other providers who were here and gave their testimony weren't there at the time, I was not there at the time. We are being asked to look at behavior that occurred in the past, months, sometimes a year ago and try to determine based on our knowledge and experience what was happening and the literature that I

reviewed, neuropsychological and other indicates that the vast majority of providers do not believe that people engage in goal directed behavior of the kind that was apparently shown by Mr. Fairrow following a seizure.

(Tr. Vol. IV at 630-631).

{¶ 7} Byrd concluded that Fairrow probably was not suffering from a mental disease or defect when he attacked Finkelstein and that he likely did know the wrongfulness of his actions. On cross examination, Bryd agreed that Fairrow probably did have a seizure on the day in question prior to the attack. He then added: "* * * [T]he issue here is not whether a person can behave aggressively after a seizure. The issue here is whether they can behave in a premeditated, goal directed, complex behavioral way and, you know, [that] just is something that rarely if ever happens, but I will concede * * * rarely means that it happens sometimes." (*Id.* at 654). Byrd reiterated his belief, however, that when Fairrow attacked Finkelstein, his "behavior appeared to be far too complex, purposeful and directed in order to qualify for [a] not guilty by reason of insanity defense as defined by the code of law." On redirect examination, Byrd was asked to assess the "probability or likelihood of someone engaging in goal directed, oriented, purposeful behavior in a postictal state." He responded that it was possible but "extraordinarily rare."

{¶ 8} The jury ultimately rejected Fairrow's insanity defense, and he was convicted and sentenced on the charges set forth above. The trial court imposed an aggregate sentence of eight years in prison. This appeal followed.

{¶ 9} In his first assignment of error, Fairrow challenges the trial court's exclusion of statements made by his mother shortly after he attacked Finkelstein. The record reflects that Fairrow shared an apartment with his mother (who died before trial), and

police spoke to her in the apartment immediately after his arrest. Officer Robert Large testified, in a hearing held outside the presence of the jury, that he entered the apartment and found Fairrow's mother, who was partially disabled due to a stroke, on her bedroom floor. She was "animated," "distressed," and "speaking really fast." She told Large that "Buddy had a seizure."[2] She also stated "that she heard [Fairrow] in the bathroom and then heard him run up the hallway and out of the apartment." Finally, she told Large that she heard Fairrow say "God help me" and that she fell while trying to get up to go after him.

{¶ 10} Defense counsel maintained that all of the statements made by Fairrow's mother were admissible as excited utterances under Evid.R. 803(2). After extensive argument, the trial court ruled that everything Fairrow's mother said was admissible except the statement "Buddy had a seizure." (Tr. Vol. II at 277). With regard to that statement, the trial court noted that the excited-utterance exception to the hearsay rule requires, among other things, " 'that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.' " *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166, quoting *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955). The trial court then reasoned:

> * * * [F]inally, this is the critical [requirement] for me at least. That the declarant had an opportunity to observe, personally, the matters asserted in his statements or declaration and again, [defense counsel] Marshall, I respect the argument you have made, but there is simply nothing in this record that will allow me—that will allow me to allow the statement, Buddy

---

[2] The record reflects that Fairrow's nickname is "Buddy."

had a seizure, to come into evidence because there is—based upon what was said to Officer Large by Ms. Fairrow—she came to this conclusion based upon what she heard and what she heard Mr. Fairrow say and based upon that which occurred in the bathroom and him—and Mr. Fairrow, evidently, running down the hallway and out the door but that—that is not sufficient in, my mind, for her to come to the conclusion that he had a seizure. Therefore, I cannot conclude that the declarant, Ms. Fairrow, had the opportunity to observe, personally, the matters asserted with the matter in this case being asserted, Buddy had a seizure. I just believe that that's a bridge too far because of the lack of the personal observation of Ms. Fairrow that—that—that would allow the conclusion that he was having a seizure. * * *.

(Tr. Vol. II at 276-277).

{¶ 11} On appeal, Fairrow contends his mother was familiar with his seizure disorder and used her own knowledge and senses to infer that he had a seizure in the bathroom. Although Fairrow admits that his mother did not "perceive the seizure with her eyes," he maintains that the trial court should have allowed her statement about the seizure "under the totality of the circumstances." (Appellant's brief at 9). In support, Fairrow recites, without attribution, the following language taken directly from *State v. McCrary*, 7th Dist. Mahoning No. 12 MA 135, 2014-Ohio-1468, ¶ 38:

> * * * [A] witness who hears an excited utterance will not always know with certainty that the declarant was watching the event about which the declaration was made; this is often assumed by the witness due to the

declarant's excited state, especially where that listener then runs upstairs and views the aftermath of the event described by the declarant who retrieved her. Importantly, the trial court can use circumstantial evidence and make reasonable inferences that a declarant had an opportunity to observe personally the matters asserted in their statements; for instance the court can view the statement itself, the excited state of the declarant, the proximity of the declarant to the event, and the other pertinent surrounding circumstances. *See, e.g.*, *City of Columbus v. Bishop*, 10th Dist. No. 08AP–300, 2008-Ohio-6964, ¶ 10–12; *State v. Holdbrook*, 12th Dist. No. CA2005-11-482, 2006-Ohio-5841, ¶ 42-52; *State v. Johnson*, 6th Dist. No. L-05-1001, 2006-Ohio-1232, ¶ 21; *State v. Moorman*, 7 Ohio App.3d 251, 252–253, 455 N.E.2d 495 (1st Dist.1982).

(Appellant's brief at 8-9).

{¶ 12} We review a ruling on the admissibility of an alleged excited utterance for an abuse of discretion. *State v. Henley*, 2d Dist. Montgomery No. 20789, 2005-Ohio-6142, ¶ 22. Here the trial court's ruling was reasonable and not an abuse of discretion. As set forth above, a declarant must have had an opportunity to observe personally the matter asserted in the alleged excited utterance. *Jones* at ¶ 166. Fairrow admits that his mother *did not* visually observe his seizure. Rather, he claims she inferred that he had a seizure based on her knowledge and experience. The case law upon which Fairrow relies, however, does not support finding an excited utterance under such circumstances. The *McCrary* case quoted above addresses the circumstances under which (1) a witness may infer that the declarant did observe the startling event, and (2) a trial court may infer that

a declarant did personally observe the startling event. It does not address *a declarant inferring* that a startling event occurred, which is what Fairrow claims his mother did here. We agree that the fourth element of the *Potter* test for admission of an excited utterance, that the declarant "observe personally" the matters asserted in the declaration, could be too restrictive. Indeed the excited utterance of a blind person should be admissible when an event is personally perceived even though they visually "observe" nothing. Likewise when a witness sees A point a gun at B, but cringes momentarily and closes their eyes while a gunshot is fired, and upon opening their eyes they see B on the floor, their declaration "A, you shot B" should be admissible because it was personally perceived although the declarant did not "observe" the gunshot. Nevertheless, on this record we determine that the trial court made a well-reasoned decision which does not constitute an abuse of discretion.

{¶ 13} Finally, even assuming, purely arguendo, that the trial court abused its discretion in excluding the statement by Fairrow's mother about him having a seizure, the error would be harmless. The real issue below was not whether Fairrow had a seizure in the bathroom of his apartment. The State's own expert, Anthony Byrd, agreed that he likely did have one there. The critical issue was whether, when he attacked Finkelstein, Fairrow was in the postictal stage of a seizure that caused him not to know the wrongfulness of what he was doing. The excluded statement by Fairrow's mother did not address that issue. For the foregoing reasons, the first assignment of error is overruled.

{¶ 14} In his second assignment of error, Fairrow challenges the legal sufficiency of the evidence to sustain his convictions. His entire substantive argument in support is as follows:

In the current case there was not sufficient evidence to support that Mr. Fairrow "knowingly" committed these crimes that he was convicted of in 2014 CR 1142 [sic]. There was insufficient evidence presented by the State to sustain Fairrow's convictions in 2014 CR 1142 [sic]. Mr. Fairrow had expert witnesses testify to his mental state at the time and believed that he was unable to recognize what he was doing. Mr. Fairrow was able to prove that at the time of his crime he was not guilty by reason of insanity. Therefore, those convictions must be reversed.

(Appellant's brief at 10).

{¶ 15} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 16} With the foregoing standards in mind, we conclude that Fairrow's convictions are supported by legally sufficient evidence. As a threshold matter, we question whether he can raise the merits of his NGRI defense in the context of a legal-sufficiency challenge. "The defendant's sanity is not an element" of a criminal offense.

*State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 35. Therefore, the State need not prove "that the defendant was sane. To the contrary, insanity is an affirmative defense." *Id.* The due-process-based "sufficient evidence" standard does not implicate affirmative defenses. *Id.* at ¶ 37. Although Fairrow's brief mentions the "knowingly" mens rea, his argument is grounded in his NGRI defense.

{¶ 17} In any event, we find legally sufficient evidence even if we consider the expert testimony upon which Fairrow relies. He presented expert testimony that, when he attacked Finkelstein, he was suffering from a mental disease, namely a postictal episode, that made him unable to know the wrongfulness of his actions. In response, the State presented expert testimony that Fairrow probably was not suffering from a mental disease or defect when he attacked Finkelstein and that he likely knew the wrongfulness of his actions. The opposing experts provided reasons for reaching the conclusions they did. Viewing the evidence in a light most favorable to the prosecution, the jury reasonably could have found the essential elements of the crimes proven beyond a reasonable doubt and reasonably could have rejected Fairrow's NGRI defense. Accordingly, the second assignment of error is overruled.

{¶ 18} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Amy E. Ferguson
Hon. Michael Tucker